**BABCOCK & WILCOX CO. et al. v. SPAULDING et al.**

**In re BROWN CO.**

**No. 3169.**

Circuit Court of Appeals, First Circuit.

Nov. 5, 1936.

Robert Hale, of Portland, Me. (Verrill, Hale, Booth & Ives, of Portland, Me., and John R. McLane and McLane, Davis & Carleton, all of Manchester, N. H., on the brief), for appellants.

Leonard A. Pierce, of Portland, Me. (Edward W. Atwood, Benjamin B. Sanderson, and Cook, Hutchinson, Pierce & Connell, all of Portland, Me., and Carl C. Jones, of Concord, N. H., on the brief), for appellees trustees of Brown Co.

Harold S. Davis, of Boston, Mass., for appellee Old Colony Trust Co., trustee.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

BINGHAM, Circuit Judge.

These are appeals under section 24a of the Bankruptcy Act, as amended (11 U.S. C.A. § 47(a), from decrees of the District Court for Maine, in one case denying the petition of the Cameron Machine Company, a New York corporation, to repossess itself of a paper winder, a slitter grinder, and their equipment, sold, under a conditional sale contract, to the Brown Company, a Maine corporation having its principal offices at Portland, Me.; and, in the other case, denying the petition of Babcock & Wilcox Company, a New Jersey corporation, to repossess itself of a certain pulverizing and burning equipment and attachments, also sold to the Brown Company under a conditional contract of sale.

The Brown Company had previously, on September 3, 1935, filed in the court below a petition for reorganization under section 77B of the Bankruptcy Act (11 U.S. C.A. § 207), which petition was duly approved.

It appears that the Brown Company, after its incorporation in the State of Maine, registered as a foreign corporation in New Hampshire where it had mills of a substantial value—the greater part of them being in Berlin where its principal New

Hampshire offices were located. It also had mills in the adjoining town of Gorham, N. H., and owned timberlands in various towns of the State.

The conditional sale contract between the Cameron Company and the Brown Company was dated August 19,. 1934, and the property sold was delivered to the latter company at Gorham, N. H., October 10, 1934, when its installation was begun in one of its mills there under the supervision of a representative of the Cameron Company. The purchase price was $11,347.50, of which there is still due $6,899.38. A memorandum of this conditional sale contract was recorded in the office of the city clerk in Berlin on October 5, 1934, but no record was made in the town clerk's office in Gorham, where the property was situated.

By a written contract dated May 27, 1935, between the Babcock Company and the Brown Company, the former agreed to install the property covered by that contract in the latter's mill at Berlin, the title to which was not to pass until full payment of the price. The installment of this property was completed on August 26, 1935. The price to be paid was $23,173, no part of which has been paid. No memorandum of this sale, as is required by the law of New Hampshire, was made and recorded in Berlin or elsewhere in New Hampshire. The Babcock Company had no residence in that State.

The trustees objected to the allowance of the petition of the Cameron Company on the ground that the memorandum of sale was not recorded in the clerk's office in Gorham where the property was situated; and to the allowance of the petition of the Babcock Company because no memorandum of sale, as required by the law of New Hampshire, was made and recorded in Berlin where the property was situated.

For these and other reasons not necessary to mention, the District Court entered decrees denying the petitions, from which these appeals were taken.

It is conceded that the questions here involved are governed by the law of New Hampshire. Sections 27, 28, and 30 of chapter 216 of the Public Laws of New Hampshire here applicable provide:

"27. *Memorandum. No lien* reserved on personal property sold conditionally and *passing into the hands* of the conditional purchaser, except a lien upon household goods created by a lease thereof, containing an option in favor of the lessee to pur-

chase the same at a time specified, *shall be valid* against attaching creditors, or subsequent purchasers without notice, *unless the vendor* of such property *takes a written memorandum,* signed by the purchaser, witnessing the lien, the sum due thereon and *containing an affidavit* as provided in the following section, and causes such memorandum *to be recorded* in the town clerk's office of the town:

I. Where the purchaser resides, if within this state; or

II. Where the vendor resides, if within this state, and the purchaser does not reside in the state; or

III. Where the property is situated if neither purchaser nor vendor resides in the state."

"28. *Affidavit.* Each vendor and purchaser shall make and subscribe an affidavit in substance as follows: We severally swear that the foregoing memorandum is made for the purpose of witnessing the lien and the sum due thereon as specified in said memorandum, and for no other purpose whatever, and that said lien and the sum due thereon were not created for the purpose of enabling the purchaser to execute said memorandum, but said lien is a just lien, and the sum. stated to be due thereon is honestly due thereon and owing from the purchaser to the vendor."

"30. *Record.* If the *record* required by section 27 is made *within twenty days after the property is delivered* the lien reserved shall be valid against all attaching creditors and purchasers; but if it is not made until after the expiration of twenty days it shall be valid against those attaching creditors and purchasers only who become such after the record."

(Italics, except the headings of the sections, supplied.)

Under these provisions of law the validity of the Cameron Company's lien depends upon whether the Brown Company resided in Berlin. If it did, the memorandum could be properly recorded there. If both the Brown Company and the Cameron Company resided out of the State, the memorandum should have been recorded in Gorham where the property was situated. It was not recorded in Gorham, but in Berlin, and was properly recorded there only in case the Brown Company had a residence in Berlin. Did the Brown Company, a corporation organized under the laws of Maine, have a residence in Berlin, N. H.?

Undoubtedly an individual domiciled in Maine, can acquire a temporary residence in New Hampshire sufficient to make a lien valid if the memorandum of conditional sale is there recorded. But as to a corporation the situation is different.

A corporation "cannot migrate." Baltimore & O. Railroad Company v. Harris, 12 Wall. 65, 81, 20 L.Ed. 354. It is generally held in this country, and particularly in the federal courts, that a corporation's residence is in the state of its incorporation "and can be nowhere else."

In Germania Fire Insurance Company v. Francis, 11 Wall. 210, 216, 20 L.Ed. 77, the court said: "The declaration avers that the plaintiff in error (the defendant in the court below) is a corporation created by an act of the legislature of the State of New York, located in Aberdeen, Mississippi, and doing business there under the laws of the State. This, in legal effect, is an averment that the defendant was a citizen of New York, because a corporation can have no legal existence outside of the sovereignty by which it was created. Its place of residence is there, and can be nowhere else. Unlike a natural person, it cannot change its domicile at will, and, although it may be permitted to transact business where its charter does not operate, it cannot on that account acquire a residence there."

In Re Schollenberger, 96 U.S. 369, 377, 24 L.Ed. 853, the court said: "A corporation cannot change its residence or its citizenship. It can have its legal home only at the place where it is located by or under the authority of its charter." See, also, Bank of Augusta v Earle, 13 Pet. 519, 588, 10 L.Ed. 274; Baltimore & O. Railroad v. Koontz, 104 U.S. 5, 11, 26 L.Ed. 643; Fairbanks Steam Shovel Co. v. Wills, 240 U.S. 642, 647, 36 S.Ct. 466, 60 L.Ed. 841; and the long list of cases in 14a C.J. 1224, note 94.

Reliance is placed by the petitioner upon the decision of the Supreme Court in Wheeling Steel Corporation v. Fox, 298 U.S. 193, 56 S.Ct. 773, 80 L.Ed. 1143 (decided May 18, 1936). That case does not bear upon the question whether a corporation may have a residence in a state other than that in which it is incorporated, but holds that, for purposes of taxation, bills . receivable may have a locus in the state in which they originated and were payable.

As the Brown Company had no residence in Berlin, the recording of the memorandum of sale there did not comply with the requirements of the New Hampshire statute; and the trustees, who possess the rights of attaching creditors, must prevail in the Cameron case.

In the Babcock Company case, although neither party resided in New Hampshire and no memorandum of sale, as required by the New Hampshire statute, was made and recorded in Berlin where the property was situated, that company contends that its conditional sale lien was a valid one and remained so during the twenty days allowed in which to make the proper record; that, as the reorganization proceedings were begun within eight days of the time when the property was delivered to the conditional purchaser, the trustees acquired no rights in it by virtue of the petition for reorganization, and a valid lien still exists even though no memorandum of sale was made and recorded in Berlin within the twenty days, or at any time. In other words, its contention is that its lien was valid against attachment or sequestration of the property for the twenty days, even though the statute of the state required something further to be done to perfect the lien against attaching creditors and purchasers without notice.

In support of their contention, counsel cite In re Lake County Fuel & Supply Company (C.C.A.) 70 F.(2d) 391; Ludowici Celadon Co. v. Potter Title & Trust Co. (C.C.A.) 273 F. 1009; In re Grosse (C.C.A.) 24 F.(2d) 305; McCormick v. Puritan Coal Mining Co. (C.C.A.) 28 F. (2d) 331; Siegel v. Wells (C.C.A.) 55 F. (2d) 877; Buss Machine Works v. Watsontown Door & Sash Co. (D.C.) 2 F. Supp. 758. In those cases the lien was good at the time of the attachment or sequestration of the property, and nothing then remained to be done to perfect the lien. But, under the New Hampshire statute, if the vendor, after the delivery of the property to the vendee, had a lien valid as between the parties to the sale he would not then have a lien valid as against attaching creditors and purchasers without notice, unless the parties to the sale executed a memorandum containing the affidavit required by the statute and caused the same to be recorded within twenty days after delivery of the property. This being so, the Babcock Company, the vendor, had no valid lien as against attaching creditors and

innocent purchasers on September 3, 1935, when the petition for reorganization was filed in the District Court, as at that time such a memorandum had not been made and recorded; and the lien did not thereafter become valid, if it could be made so, by the parties making such a memorandum and recording it in the proper place within twenty days.

It is intimated by the Supreme Court of New Hampshire in Churchill v. Demeritt, 71 N.H. 110, at page 113, 51 A. 254, 256, that "the statute allows 20 days in which to complete and record the memorandum," although the question was not directly in issue. But, as above said, if the intimation there made is the correct interpretation of the statute, it is manifest that, under the facts in this case, the Babcock Company, at the time of the filing of the reorganization petition, did not have a valid lien as against attaching creditors and purchasers without notice and did not thereafter acquire one by causing the requisite memorandum to be made and recorded within the twenty days.

Having reached these conclusions, it is unnecessary to consider the other questions that have been argued. The decrees of the District Court must be affirmed.

The decrees of the District Court in the above cases are affirmed, with costs to the appellees in both cases.